BILLY C. CHRISTENSEN *v.* ANTHONY F. CUTAIA
(13661)

PETERS, C. J., HEALEY, CALLAHAN, COVELLO and HULL, Js.

Argued May 4—decision released June 20, 1989

*Susan C. Webb,* for the appellant (defendant).

*Edward V. O'Hanlan,* with whom was *Steven R. Humphrey,* for the appellee (plaintiff).

PETERS, C. J. This is an appeal from the granting of summary judgment and the award of interest in accordance with the terms of a series of promissory notes. The plaintiff, Billy C. Christensen, brought an action to collect the amount due on a series of promissory notes executed by the defendant, Anthony F. Cutaia. The notes contained acceleration clauses that, upon the defendant's default, the plaintiff had exercised to declare all of the notes due and owing. After granting summary judgment, the trial court permitted reargument on the issue of damages and thereafter rendered judgment for the plaintiff in the amount of $65,605.65, despite the defendant's argument that he had tendered payments to the plaintiff that should have been taken into account in calculating his liability for interest. The defendant appealed to the Appellate Court. We transferred the case here pursuant to Practice Book § 4023 and now find no error.

The pleadings of the parties and their affidavits disclose the following facts. On September 15, 1985, the defendant drafted and executed, as maker, a series of twelve promissory notes in the aggregate principal amount of $70,788, as partial payment for his purchase

of certain limited partnership interests.[1] The notes, numbered consecutively "No. 2 of 13" through "No. 13 of 13," were each payable to the plaintiff in the amount of $5899 plus 11 percent interest per annum.

In identical terms, each note provided that it became due and payable on the fifteenth day of every third month[2] and that, upon default, the plaintiff could cause all of the remaining notes to become "immediately due and payable." The notes defined a "default" to include the defendant's failure "to make any payment of principal or interest due on this Note when same shall be due and payable . . . ."[3] Each note also provided that, in the event of a default, the plaintiff would be entitled additionally to 18 percent interest per annum on the entire unpaid principal until the defendant paid the entire amount due.[4] The notes gave the maker no grace period for delayed payments; instead, they con-

---

[1] At oral argument, defense counsel acknowledged that the defendant was the draftsman of the notes.

[2] "No. 2" became due and payable on March 15, 1986, "No. 3" on June 15, 1986, "No. 4" on September 15, 1986, and "No. 5" on December 15, 1986. "No. 13," the final note in the series, became due and payable on December 15, 1988.

[3] Each promissory note provided: "The principal of this Note together with the interest accrued thereon shall, at the option of the holder, be immediately due and payable in the event of default by the Maker under this Note. Any one or more of the following shall constitute an 'event of default' hereunder:

"(a) The Maker fails to make any payment of principal or interest due on this Note when same shall be due and payable; and

"(b) the Maker shall be [in] default under any one or more of the Other Notes . . . ."

[4] The notes provided: "Maker does hereby agree that if an event of default occurs pursuant to the terms of this Note, or collateral security agreement securing the note between Billy C. Christensen, as secured party, and Anthony F. Cutaia, as debtor, of even date herewith, then the holder of this Note shall be entitled to receive interest on the entire unpaid principal sum at the rate of eighteen percent (18%) per annum or at the maximum rate of interest which the Maker may by law pay, whichever is lower, to be computed from the due date and until the actual receipt and collection of the entire amount due pursuant to the terms of this Note."

tained nonwaiver clauses,[5] stipulating that the plaintiff's failure to assert a right would not amount to a waiver and requiring any waiver to be in writing.

From the outset, the defendant's payments were untimely. The plaintiff received payment for the note denominated "No. 2," due and payable on March 15, 1986, on March 17, 1986. He received payment for note No. 3, due and payable on June 15, 1986, on June 24, 1986, and received payment for note No. 4, due and payable on September 15, 1986, on October 17, 1986.[6] After receiving the belated payment on note No. 4, the plaintiff informed the defendant, directly as well as through an employee, that he would no longer tolerate late payment.

On January 8, 1987, not having received payment on note No. 5, due on December 15, 1986, the plaintiff telephoned the defendant and informed his secretary that he intended to exercise his right to declare a default and to accelerate payment on the notes. On that same day he informed the defendant by certified mail that he had declared the entire outstanding amount of the notes due and payable immediately. The defendant received this notice on January 9, 1987, and that day sent a check to the plaintiff by express mail as payment for note No. 5. The plaintiff deposited this check in his account.

On February 20, 1987, the plaintiff brought the present action for payment of the unpaid balance on

[5] The notes provided: "Failure of the holder hereof to assert any right herein shall not be deemed to be a waiver thereof. . . . This note shall not be modified, terminated or discharged, nor shall any waiver hereunder be effective, unless in writing signed by the party against whom enforcement of any waiver, modification, termination or discharge is sought."

[6] The defendant, in his pleadings and affidavit, does not dispute the date that the plaintiff received payment from him, but simply represents that he had *dated* the checks on March 15, 1986, June 13, 1986, and September 29, 1986, respectively.

the remaining eight promissory notes, due in full after his exercise of the right to accelerate. The defendant claimed that the plaintiff's course of conduct in having previously accepted late payments had led the defendant to believe that time was not of the essence. He thus argued that the plaintiff was estopped from exercising his right to accelerate because, by his conduct, the plaintiff had in effect waived that clause in the notes. He also claimed that any default with respect to note No. 5 had been cured by his payment of that note in accordance with the plaintiff's demand.

During the pendency of this litigation, the defendant continued to forward payment to the plaintiff for each note as it came due. The plaintiff refused to accept these tenders even though the defendant characterized the payments as unqualified tenders, offered without prejudice.

After the close of the pleadings, the trial court granted the plaintiff's motion for summary judgment, ruling that neither the defendant's pleadings nor his affidavits had raised a genuine issue of material fact. The court found that, upon the defendant's default, the plaintiff had properly exercised his right to acceleration and that neither the defendant's subsequent tender nor the plaintiff's acceptance of payment for note No. 5 had cured the default. Thus, the court rendered judgment for the plaintiff in the amount of $65,605.65, comprising the remaining principal of $47,192, 11 percent interest to the date of default, December 15, 1986, and 18 percent interest thereafter.[7]

---

[7] The trial court originally rendered judgment in the amount of $72,685.10. Upon reargument, the court corrected its calculation of the amount due, and rendered judgment for the plaintiff in the amount of $65,605.65, calculated to June 2, 1988. The court ruled that additional interest would accumulate at the rate of $23.59 per diem thereafter.

On appeal the defendant claims that the trial court erred in granting the plaintiff's motion for summary judgment and in calculating damages in light of the defendant's unqualified tenders subsequent to the declaration of default. Neither claim persuades us.

I

The defendant first argues that the trial court erred in granting the plaintiff's motion for summary judgment in that there existed two genuine issues of material fact: (1) whether prior to the defendant's payment on note No. 5 he had notice of the plaintiff's declaration of a default under that note; and (2) whether the plaintiff had waived his right to object to the late payments.[8] We disagree that any genuine issue of material fact existed. See Practice Book § 384.

The defendant's claimed factual dispute about notice of his default arises out of his contention that he tendered payment of note No. 5 before he personally received notice of the plaintiff's declaration of a default. He asserts that the plaintiff claims only to have spoken with the defendant's secretary, and not with the defendant himself, when the plaintiff announced his intent to declare a default and to accelerate the remaining indebtedness on January 8, 1987. The defendant

---

[8] The defendant makes two claims on appeal that he did not make below on the question of the existence of a genuine issue of material fact. He now claims that there was a factual dispute about: (1) whether the acceleration clause on which the plaintiff relied authorized acceleration of all eight outstanding notes or only of note No. 5; and (2) whether terms of the security interest, which served as collateral for the notes and provided a ten day "grace period," modified the terms of default in the notes themselves. Since neither of these claims was "distinctly raised" in the trial court, in the defendant's pleadings, affidavit, memorandum opposing summary judgment, or by way of a motion to correct or reconsider, and neither was addressed by the trial court in rendering its judgment, we need not consider them further. Practice Book § 4185; see *Dubay* v. *Irish*, 207 Conn. 518, 528, 542 A.2d 711 (1988); *Mingachos* v. *CBS, Inc.*, 196 Conn. 91, 96, 491 A.2d 368 (1985).

alleges that it is unclear whether he mailed his payment for note No. 5 before or after his receipt of the plaintiff's certified letter manifesting the same intention. He reminds us that the plaintiff thereafter received, accepted and cashed the payment check.

This argument fails because, as a matter of law, it is immaterial whether the defendant had notice of the declared default when he hurriedly sent payment by express mail to the plaintiff. Because payment on note No. 5 was already indisputably late, the defendant was, by the terms of the notes, in default, and the plaintiff was entitled affirmatively to exercise his option to accelerate. The notes did not prescribe any manner of notification nor did they require the plaintiff to provide notice of default to the defendant before the tender of any payment. Absent statutory or contractual language to the contrary, the plaintiff had no such obligation. *Albertina Realty Co.* v. *Rosbro Realty Corporation,* 258 N.Y. 472, 475–76, 180 N.E. 176 (1932); *Key International Manufacturing, Inc.* v. *Stillman,* 103 App. Div. 2d 475, 477, 480 N.Y.S.2d 528 (1984);[9] see also *Console* v. *Torchinsky,* 97 Conn. 353, 355, 116 A. 613 (1922). Thus, whether the notice arrived before the defendant had tendered payment is not a genuine issue of material fact.[10]

The defendant also argues that there existed a genuine issue of material fact regarding his claim of waiver arising out of the plaintiff's actions in accepting and cashing previous late payments. This contention is untenable in light of the language in the notes expressly providing that "[f]ailure of the holder hereof to assert any right herein shall not be deemed to be a waiver thereof." While inconsistent conduct may, under cer-

---

[9] The notes provided that New York law governs their construction.

[10] The defendant has not argued that he tendered payment before the plaintiff affirmatively exercised his option to accelerate on January 8, 1987.

tain circumstances, be deemed a waiver of a right to acceleration, the insertion of a nonwaiver clause is designed to avoid exactly such an inference. The defendant drafted these notes himself and we therefore construe the included clause against him strictly. See *Mack Financial Corporation* v. *Crossley*, 209 Conn. 163, 168, 550 A.2d 303 (1988); *Greenwich Contracting Co.* v. *Bonwit Construction Co.*, 156 Conn. 123, 130, 239 A.2d 519 (1968). Thus, the plaintiff's earlier election to accept late payments rather than to enforce acceleration did not operate as a waiver of his contractual right to accelerate. Further, the notes provided that any waiver shall not "be effective, unless in writing signed by the party against whom enforcement of any waiver . . . is sought." Neither the defendant's pleadings nor his affidavits have alleged the existence of any such writing. We therefore conclude that the trial court did not err in granting the plaintiff's motion for summary judgment.

## II

Finally, the defendant claims error in the trial court's calculation of interest once it had determined the validity of the plaintiff's acceleration. He does not dispute the trial court's calculation of the outstanding principal, the regular interest or the default interest. Rather, the defendant contends that because he continued to make unqualified tenders of payment to the plaintiff, which the plaintiff refused to accept, the court erred in awarding 18 percent interest on those sums after the date of their tender. The defendant's argument runs contrary to both the terms of the contract and the applicable principles of commercial law.

Once the plaintiff exercised his right to accelerate payment, the defendant's outstanding indebtedness became the total amount due on all of the notes, plus accrued interest. The amounts tendered by the defend-

ant, however, represented the amount due every three months, i.e., a partial payment of the total amount then due and owing. Thus, in effect, the defendant argues that a tender of partial payment discharges any subsequent liability for interest on that amount.

There is no authority to support the defendant's position. Each of the notes he drafted expressly provided that, upon the defendant's default, the plaintiff would be entitled to receive 18 percent interest "on the entire unpaid principal sum . . . to be computed from the due date and until the actual receipt and collection of the *entire amount due pursuant to the terms of this Note.*" (Emphasis added.) This clause is entirely consistent with § 3-604 (1) of the Uniform Commercial Code, which provides: "Any party making tender of *full* payment to a holder when or after it is due is discharged to the extent of all subsequent liability for interest, costs and attorney's fees." (Emphasis added.) See General Statutes § 42a-3-604 (1); N.Y. U.C.C. Law § 3-604 (1) (McKinney 1989). If the debtor does not tender *full* payment, the holder retains the right to reject any partial payment and to collect the interest that continues to accrue until the tender of the entire amount due. See *Still* v. *Plaza Marina Commercial Corporation,* 21 Cal. App. 3d 378, 385, 98 Cal. Rptr. 414 (1971); *Security National Bank of Long Island* v. *Schwartz,* 2 U.C.C. Rep. Serv. 411, 412 (N.Y. Sup. 1965); *Citizens Valley Bank* v. *Douglas Robins, Inc.,* 69 Or. App. 711, 715, 687 P.2d 815 (1984); *Kohlenberg* v. *American Plumbing Supply Co.,* 82 Wis. 2d 384, 397–99, 263 N.W.2d 496 (1978). Thus, the trial court did not err in awarding interest on the entire amount due at the annual rate of 18 percent, despite the defendant's unqualified partial tenders.[11]

[11] The defendant's claim that the 18 percent rate of interest violates General Statutes §§ 37-4, 37-5, 37-6, 37-8, 42-110a and 42a-9-201 ignores General Statutes § 37-9 (4), which provides in part: "The provisions of sections

There is no error.

In this opinion the other justices concurred.

37-4, 37-5 and 37-6 shall not affect . . . (4) any loan made to a foreign or domestic corporation, general or limited partnership or association organized for a profit or any individual, provided such corporation, partnership, association or individual is engaged primarily in commercial, manufacturing, industrial or nonconsumer pursuits and provided further that the funds received by such corporation, partnership, association or individual are utilized in such entity's business or investment activities and are not utilized for consumer purposes and provided further that the original indebtedness to be repaid is in excess of ten thousand dollars . . . ."