[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a foreclosure action in which the plaintiff, State Bank of Westchester (State Bank), of White Plains, sued the named defendant, New Dimension Homes of Connecticut, Inc. (New Dimension), to collect the balance due on a mortgage note executed by this defendant on July 26, 1988, in the principal amount of $2,025,000. The promissory note was secured by a mortgage on five lots owned by New Dimension and located in Wilton. The proceeds of the loan were used to acquire the lots, to obtain an option on other lots, and to build two model homes. The plaintiff claims that the note went into default when the defendant failed to pay the installment of interest due on July 26, 1989. Thereafter the plaintiff exercised its option to declare the entire balance of the note due. State Bank also seeks to be reimbursed for interest, late charges, taxes, attorney's fees and costs of collection. In addition to the named defendant, the plaintiff also joined as defendants four individuals, N. David Hanania, Raymonde Myjak, Earle S. Rynston, and George Stanley, who allegedly each personally guaranteed the — repayment of the mortgage note in question.
The defendants filed an answer admitting execution of the note, the mortgage deed, and the guarantee. They also filed two special defenses, the first alleging that State Bank has promised to loan more money, in addition to the $2,025,000, if needed to complete development of the lots in Wilton, and have reneged on this promise. The other defense alleged that the loan was usurious pursuant to General Statutes 37-4.[1]
The case was referred to Attorney David Albert, an attorney trial CT Page 6973 referee, in accordance with General Statutes 52-434(a) and Practice Book 428 et seq. The referee conducted a trial over the course of nine days, and then filed a report containing a number of findings of fact. He found that: (1) the contract to purchase the lots in Wilton, dated March 18, 1988, provided for a $100,000 non-refundable deposit; (2) the plaintiff gave New Dimension a commitment letter dated July 15, 1988, which was amended July 26, 1988, the date of the closing, agreeing to lend the corporate defendant $2,025,000, and also requiring personal guarantees by the individual defendants; (3) plaintiff advanced the full amount of the loan, was in possession of the note, and the defendants were in default in repayment of the loan; (4) "[t]here is not even a hint in any of the written documents presented in evidence to substantiate Defendants' claim that Plaintiff was committed to advance additional funds on the project";[2] (5) the individual defendants were sophisticated businessmen who knew they were executing a legally binding guarantee; (6) the individual defendants made a business decision to execute the guarantee, rather than forfeit the $100,000 non-refundable deposit; and (7) although the interest claimed is greater than 12%, the loan is not usurious as to the corporate defendant pursuant to General Statutes 37-9(3),[3] but was usurious as to the individual defendant guarantors, and hence they would not be subject to a deficiency judgment based on General Statutes 49-14.[4]
The attorney trial referee concluded that: (1) plaintiff loaned the corporate defendant $2,025,000, which remains unpaid and due; (2) the loan was not usurious as to New Dimension Homes, General Statutes37-9(3), but was usurious as to the individual guarantors, under the authority of Maresca v. DeMatteo, 6 Conn. App. 691, 696, 506 A.2d 1096
(1986) ("[w]e conclude, therefore, that usury is a defense in a deficiency judgment proceeding . . ."); and (3) a judgment of strict foreclosure should be entered, but the plaintiff would not be entitled to recover deficiency judgment against the four guarantors.
Pursuant to Practice Book 438, both the plaintiff and the defendants moved to correct the report. The plaintiff contended, among other things, that the findings of fact should be corrected to reflect the fact that General Statutes 37-4, which prescribes a maximum interest rate, does not apply to the individual defendants, citing General Statutes 37-9(3) and (4), and Associated East Mortgage Company v. Highland Park. Inc., 172 Conn. 395, 405-06,374 A.2d 1070 (1977) ("[I]t is now generally recognized that a statute withdrawing the defense of usury from a corporation applies also to individual guarantors, sureties, and indorsers on corporate obligations, so that they, as well as the corporation, are precluded from interposing CT Page 6974 usury as a defense.") (Internal quotation marks omitted.)
The defendants also filed a motion to correct the report to add the following: (1) the individual defendants believed that they were signing a non-recourse loan and that they would not be subject to a deficiency judgment;[5] (2) John Fitzgerald, plaintiff's chairman and chief executive, orally promised both to loan the defendants more money if needed to complete the project, and also not to pursue the defendants for their individual guarantees; and (3) these promises constituted false and fraudulent misrepresentations.
The referee declined to make any corrections in his report except: (1) after further review, he agreed with plaintiff that the loan was not usurious as to the individual defendants, the guarantors, because General Statutes 37-9(4) exempts commercial loans over $10,000;[6]
(2) the attorney for the defendants explained to the individual guarantors that they were executing a legally-binding obligation and the defendants knew that their guarantees were binding; and (3) the defendants had failed to prove their special defense of fraudulent misrepresentation.
In addition, the referee reaffirmed his conclusions that: (1) a judgment of strict foreclosure should enter, but agreed that the issue of the deficiency judgment would only arise after title vested, and a motion claiming a deficiency was filed by plaintiff;[7]
(2) the debt was determined to be $2,025,000 principal, plus interest, taxes and attorney's fees to be calculated at the foreclosure short calendar; and (3) the individual defendants would be subject to a deficiency judgment, if one entered, as they had failed to prove their special defenses of fraud and usury.
The defendants then filed exceptions to the report, Practice Book 439, and annexed thereto the required transcript. The exceptions contend that the referee's report should have been amended to indicate that: (1) the individual defendants are not subject to a deficiency judgment; (2) Fitzgerald had the authority to bind the plaintiff and he had promised that the plaintiff would lend more money, if necessary; (3) it was a non-recourse loan because State Bank did not require financial information regarding the four individual defendants; and (4) the plaintiff, acting by Fitzgerald, committed fraud in promising to turn over more money to the defendants, and in agreeing not to pursue the individual defendants on their guarantees.
This court's authority in reviewing an attorney trial referee's CT Page 6975 recommendations as to the facts of a given case is a limited one. As our Supreme Court held in Dills v. Enfield, 210 Conn. 705, 714,557 A.2d 517 (1989): (1) the trial court may not "retry the case"; (2) a court may not find additional facts or reject facts found by the referee unless, in the words of Practice Book 439, "a material fact has been found without evidence or the (referee) has failed to find an admitted or undisputed fact, or has found a fact in such doubtful language that its real meaning does not appear"; and (3) a trial court may not engage in "fact-finding contrary to the report of the referee." Id., 716. Also, Wilcox Trucking, Inc. v. Mansour Builders. Inc.,20 Conn. App. 420, 425, 567 A.2d 1250 (1989), notes that: "[i]n a contract action, findings of fact should be overturned only when they are clearly erroneous."
According to Bernard v. Gershman, 18 Conn. App. 652, 656, 559 A.2d 1171
(1989), this court's task is to determine whether the conclusions of fact and law "are legally and logically correct and whether they find support in the facts found by the referee." Practice Book 440. This procedure appears to be similar to that employed by an appellate court in reviewing a decision of the trial court. "On appeal, our review is limited to a determination of whether the trier's findings are clearly erroneous . . . . This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous . . . ." (Internal quotation marks and citations omitted.) Fortier v. Newington Group. Inc., 30 Conn. App. 505, 509,620 A.2d 1321 (1993).
Therefore, the first issue is whether the referee's factual findings are supported by the record. The defendants do not deny that New Dimension executed the note and mortgage, and that the individual defendants guaranteed repayment of the note, but contend that the plaintiff agreed orally to lend the defendants more money if needed, and not to pursue the individual guarantors for a deficiency judgment.
A review of the transcript indicates, among other things, that Fitzgerald denied that he ever promised the defendants either to roll over the note, or to loan more money if requested. He also denied that he ever promised the individual guarantors that they would not be pursued in a foreclosure action or in a motion for a deficiency judgment.[8] of course, there was testimony to the contrary, but CT Page 6976 as the Appellate Court noted in Citytrust v. Page, 28 Conn. App. 907,908, 610 A.2d 197 (1992), "[a]lthough much of the trial testimony was disputed, the credibility of witnesses, the findings of facts and the drawing of inferences are all within the province of the trier of fact . . . . It is futile to assign error involving the weight of testimony or the credibility of witnesses . . . . This court can neither retry the facts in order to make our own findings nor pass on the credibility of witnesses . . . but can only review such findings to determine whether they could legally, logically and reasonably be found thereby establishing that the trial court could reasonably conclude as it did." (Internal quotation marks and citations omitted.) In reviewing the motion to correct and exceptions, one senses that the defendants are attempting to substitute their own version of the facts for those found by the referee, a practice which was discountenanced in Argentis v. Gould, 23 Conn. App. 9, 19, 579 A.2d 1078 (1990).
The next issue is whether the referee's conclusions that a judgment of strict foreclosure should enter, and that the individual guarantors would be subject to a deficiency judgment follow logically and legally from his factual findings. The conclusions were based on the finding that the individual defendants knew that their guarantees were binding, and that as a matter of fact, their counsel conceded that at the closing he advised the individual defendants that their guarantees would be binding. The other conclusion that usury was not a valid defense was based on the clear holding of Associated East Mortgage Company, supra. In addition, the Supreme Court in Christensen v. Cutaia, 211 Conn. 613,621 n. 11, 560 A.2d 456 (1989), stated that:"The defendant's claim that the 18 percent rate of interest violates General Statutes 37-4 . . . ignores General Statutes 37-9(4)" exempting loans to corporations engaged in nonconsumer pursuits.
The defendants also filed objections to the acceptance of the report, Practice Book 440, as part of the same document containing their exceptions to the report. The objections center around the referee's denial of their motion, made during the course of the trial, to amend their answer and special defenses to add a counterclaim. The proposed counterclaim dated April 14, 1992 alleges that: (1) the defendants relied to their detriment on plaintiff's representations of financial assistance in the purchase of 15 building lots and complete construction of residential dwellings on these lots, and as a result of such reliance expended large sums of money and were forced into default under the terms of the mortgage; (2) the plaintiff knew or should have known that the representations plaintiff made were false in that the plaintiff would be exceeding legal lending limitations set by state and federal regulations as well as plaintiff's Board of Directors; and (3) plaintiff's conduct constitutes unfair trade CT Page 6977 practice in violation of General Statutes 41-110a et seq., the Connecticut Unfair Trade Practices Act (CUTPA)[9].
Defendants contend that the referee lacked the authority to either grant or deny their motion to amend.[10] This claim necessarily involves the proper role of an attorney trial referee. Defendants emphasize the description of the referee's role as a fact finder in Seal Audio, Inc. v. Bozak, Inc., 199 Conn. 496, 502, 508 A.2d 415 (1986) (". . . having no power to render a judgment, an attorney referee is simply a fact-finder . . ."). We do not have any definitive appellate decision on the precise role of the attorney trial referee in the course of a trial, but to claim that he or she can only find facts is at the least unrealistic. During the course of a trial all manner of motions arise. Without attempting to exhaust the subject by any means, what comes to mind are such matters as a motion in limine, objections to the introduction of evidence because it was not properly disclosed, a request after a trial is finished to present new evidence that was omitted, a request to amend the pleadings to conform to the evidence, deciding whether to permit an attorney for one of the parties to take the stand and testify as a witness, deciding whether to clear the courtroom at the request of a party, the granting of a continuance for the purpose of allowing a missing witness to testify, taking witnesses out of order, ruling on qualifications of an expert, and deciding whether a witness is competent. Ruling on these matters could hardly be described as "fact finding," yet our attorney trial referees do it every day. To expect the trial to come to a halt, while the parties look for a judge, who knows nothing about the case and is occupied elsewhere, to rule on the type of motions noted above is impractical and unworkable. I believe that only the person conducting the trial is in a position to rule on such matters.
It is true that the referees file recommendations which are then reviewed by a judge as in this case, who alone can enter judgment, but this does not mean that a referee must stop a trial every time a motion comes up. My sense of the attorney trial referee program is that a court case is assigned to a referee, provided, of course, that the parties have agreed, for all purposes. It is his or her case to try and then report back to the court with a recommendation for judgment. Any problem, motion or request that arises in the course of a trial is to be decided by the attorney trial referee, whose decisions obviously are reviewed in the context of exceptions and objections to the referee's report. In short, I believe that the attorney trial referee acted within his authority in denying defendants' motion made during the trial to add a counterclaim. In any event, the proposed counterclaim alleged fraudulent misrepresentations by the plaintiff, and the attorney trial referee CT Page 6978 rejected such claims by the defendants as unproven.
Based on the standard of review in Dills v. Enfield, supra, I could neither find nor determine that the attorney trial referee's conclusions that the mortgage to plaintiff should be foreclosed or that the individual guarantors were liable for a possible deficiency judgment were unwarranted, illegal or illogical. To the contrary, I believe that, in the words of Practice Book 440, his recommendations were "properly reached on the basis of the subordinate facts found." Thus, no material error in the referee's report has been found, or any other sufficient reason why it is unacceptable. Practice Book 443.
Judgment is entered in accordance with the report of the attorney trial referee in favor of the plaintiff State Bank as follows: (1) a judgment of strict foreclosure hereby enters; (2) the individual defendants shall be personally liable for a deficiency judgment if one is sought after title vests; (3) the principal debt due plaintiff is determined to be $2,025,000; and (4) the plaintiff should claim to the foreclosure short calendar the matters of calculation of interest, late charges and attorney's fees, as well as the current valuation of the realty, and the setting of law dates.
Costs are to be taxed by the clerk.
So Ordered.
Dated at Stamford, Connecticut, this 6 day of August, 1993.
William B. Lewis, Judge